# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Shirley Grimmett,**
**Plaintiff Below, Petitioner,**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0061**      (Logan County No. 14-C-265)

**Wiseman Excavating, Inc.,**
**Defendant Below, Respondent**


Petitioner Shirley Grimmett, by her counsel D. Adrian Hoosier, II, appeals the December 20, 2018, order of the Circuit Court of Logan County, granting summary judgment in favor of respondent. The circuit court found that petitioner's April 2017 amended complaint naming the respondent, Wiseman Excavating, Inc. ("Wiseman"), asserted causes of action that arose in July 2013 and were barred by the statute of limitation. Respondent Wiseman, by its counsel Brent K. Kesner, Ernest G. Hentschel, II, and Mark L. Garren, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 11, 2010, a forest fire ignited an area of coal and other debris left behind by a 1950s-era surface mine operation. Petitioner Shirley Grimmett lives in her home next to, and downslope from, the area of burning coal debris. The record suggests petitioner lives near a family member, Mr. Walter Grimmett.

In response to the coal debris fire, the West Virginia Department of Environmental Protection ("DEP") sought to hire contractors to excavate the burning area to extinguish the fire, regrade the land, place a soil cap over the affected area to prevent future fires, and plant new vegetation in the disturbed areas. After soliciting bids, DEP selected respondent Wiseman to perform the grading and remediation work.

The record suggests that DEP attempted to negotiate a right to enter the Grimmett family properties to reach the coal debris fire. DEP's efforts were unsuccessful. Thus, DEP sent a letter to the Grimmett family in January of 2011 advising them that DEP would exercise its statutory rights to enter their lands. Thereafter, between February 13, 2011, and March 8, 2011, and on behalf of DEP, Wiseman performed work on the coal debris fire. DEP's public records of the project clearly indicate that Wiseman performed the remediation work around petitioner's property.

1

On July 22, 2013, over two years after Wiseman completed its work, a landslide began upslope of petitioner's home and flowed onto petitioner's land. While the record is unclear, we presume the landslide occurred where respondent Wiseman had performed grading to address the coal debris fire on behalf of DEP.

That same day, DEP received a report of the landslide from Mr. Grimmett and conducted an emergency investigation. The investigator's report noted that Mr. Grimmett's "and several of his family member's homes" are at the base of a steep mountainside. The landslide occurred, and "mud generated by the slide ran around the perimeter of his sister-in-law's home" that is adjacent to Mr. Grimmett's home. We discern from the record that the DEP inspector was discussing damage to petitioner's home. The record indicates that DEP accepted responsibility for the slide. Thereafter, DEP spent several months and approximately $500,000 remediating the landslide and removing debris near petitioner's home.

Fourteen months after the landslide, on September 23, 2014, petitioner's lawyer (the aforementioned D. Adrian Hoosier, II) filed suit against EQT Corporation d/b/a Equitable Gas Company ("EQT"). The original complaint seems to indicate that petitioner lived downslope from a pipeline owned by EQT or one of its subsidiaries. The complaint asserted no claims against either DEP or Wiseman. The complaint drafted by petitioner's lawyer contained only generalized allegations that petitioner had suffered property damage, physical and emotional harm, and loss of use and enjoyment of her land and home as a result of non-specified "actions" of EQT. The complaint made no mention of the 2010 coal debris fire, the 2011 grading and remediation work, or the 2013 landslide.[1]

Upon being served with the original complaint, EQT submitted a Freedom of Information Act request to DEP seeking records relating, among other things, to the remediation of the coal debris fire. These records clearly showed that Wiseman had been contracted to perform the remediation work. After receiving those records, EQT filed a third-party complaint against DEP (but not Wiseman) on January 9, 2015. EQT alleged that DEP had, through activities unrelated to EQT's operation of a pipeline, "caused rock, dirt and other materials to slip or slide from a hillside onto [petitioner's] property and homestead." Petitioner's lawyer did not seek to amend petitioner's original complaint to assert claims against DEP or against respondent Wiseman.

DEP moved to dismiss EQT's third-party complaint and argued that, as a state agency, it was constitutionally immune from suit. The circuit court denied DEP's motion in October of 2015, and thereafter DEP answered EQT's third-party complaint.

For several months, DEP proceeded to defend against EQT's third-party claims. Then, on February 1, 2016, DEP sent a letter to Wiseman. The letter referred to the remediation contract between DEP and Wiseman, and it noted that the contract required Wiseman to indemnify and hold harmless DEP in connection with EQT's third-party complaint. Wiseman's president later

---

[1] To further confuse matters, petitioner's lawyer filed the original complaint in Logan County asserting venue was proper in Logan County because petitioner lived in Logan County. Petitioner's lawyer subsequently filed a motion for a change of venue, complaining that the petitioner actually lived in Mingo County. The circuit court denied the motion.

testified that this February 2016 letter from DEP was the first notice of any potential claim that Wiseman had received arising out of the 2011 project.

Wiseman promptly notified its insurer, which then retained counsel to simultaneously defend both DEP and Wiseman. That counsel renewed DEP's motion to dismiss EQT's third-party complaint on the ground that DEP was a constitutionally immune state agency. On April 13, 2017, the circuit court granted DEP's motion to dismiss.

On April 26, 2017, thirteen days after the circuit court had found DEP was constitutionally immune and dismissed DEP as a third-party defendant, petitioner's lawyer filed a motion to amend petitioner's original, September 2014 complaint. The proposed amended complaint, for the first time, asserted claims against both DEP and Wiseman for damages arising from the 2013 landslide. Petitioner's lawyer contended in the motion to amend that he had "determined that current third-party defendant DEP is . . . liable to the [petitioner]." Petitioner's lawyer also stated that he had "recently discovered" that DEP had "contracted with Wiseman to complete a project that caused harm to the plaintiff's home."

At a hearing held six days after filing the motion to amend, petitioner's lawyer announced to the circuit court he was abandoning any claims against DEP. Thereafter, the circuit court granted petitioner's motion to amend the complaint to add claims against Wiseman. The amended complaint alleged negligence in Count 1; nuisance in Counts 2, 3, and 4; trespassing in Count 5; gross negligence in Count 6; infliction of emotional distress in Counts 7 and 8; and a punitive damage claim in Count 9.

On July 26, 2017, Wiseman moved to dismiss petitioner's amended complaint. Wiseman argued that the relevant statutory limitation periods in West Virginia Code § 55-2-12 barred all nine of petitioner's claims.[2] At a hearing, the circuit court announced its intent to dismiss the three nuisance counts in petitioner's amended complaint.[3] The circuit court found West Virginia Code § 55-2-12 required petitioner to file her nuisance claims within one year, yet she waited fourteen months after the 2013 landslide to file her original complaint. While the nuisance claims were barred, the circuit court permitted the parties to conduct discovery to determine if petitioner's lawyer could establish some equitable exception to the statute of limitations for petitioner's other

---

[2] W. Va. Code § 55-2-12 provides the following limitation periods:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

[3] The circuit court entered an order on January 24, 2018, which dismissed the nuisance claims contained in Counts 2, 3, and 4 of petitioner's amended complaint with prejudice. Petitioner does not appeal this order.

claims, *see Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009) (discussing various equitable doctrines that toll a statute of limitation), or could establish that the amended complaint avoided the statute of limitations because it "related back" to the original complaint under Rule 15(c) of the West Virginia Rules of Civil Procedure.

After the parties completed discovery, respondent Wiseman filed a motion for summary judgment. Wiseman argued that the six remaining counts in petitioner's amended complaint were barred by the two-year statute of limitation in West Virginia Code § 55-2-12. In an order dated December 20, 2018, the circuit court granted Wiseman's motion for summary judgment and dismissed petitioner's remaining claims.

Petitioner now appeals the circuit court's summary judgment order.

On appeal, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is well established that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W. Va. at 190, 451 S.E.2d at 756.

As this Court has previously noted, "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995).

We begin by noting that the appellate brief by petitioner's lawyer, Adrian Hoosier, fails to meet the requirements of the West Virginia Rules of Appellate Procedure. Specifically, Rule 10(c)(3) requires a lawyer to open the petitioner's brief with "a list of the assignments of error that are presented for review." More importantly, Rule 10(c)(7) requires a lawyer to present an argument in the brief "under headings that correspond with the assignments of error."

The petitioner's brief filed by Mr. Hoosier fails to comply with Rule 10(c)(7). The brief's table of contents and its opening list two assignments of error.[4] A review of the brief shows a

---

[4] Petitioner's assignments of error are neither models of appellate advocacy nor grammatical clarity. The two assignments are, verbatim:

> 1. The Hon. Judge Eric O'Briant, Circuit Court Judge, Logan County, West Virginia erred by granting summary judgment, in favor of the Defendant, Wiseman Excavating, Inc. ("Wiseman" or "Defendant" herein after) based on notice per the

proper heading for the first assignment at the beginning of an argument section on page four. However, the brief's table of contents notes that the argument for the second assignment of error begins on page five. Having scoured the twenty-one-page brief filed by petitioner's lawyer, we cannot find any heading for the second assignment. Moreover, we can find no argument corresponding with the assignment anywhere in the brief. Accordingly, due to Mr. Hoosier's failure to comport with this Court's rules, we refuse to address the second assignment of error asserted in the brief's table of contents and opening.

Petitioner's first (and now, only) assignment of error is difficult to decipher, but appears to assert that the circuit court erred in granting summary judgment on statute of limitation grounds. Petitioner's overall argument is that the circuit court properly entered several orders that initially allowed petitioner to proceed on her claims against Wiseman, but then the circuit court erred when it reversed course and dismissed those same claims.

To begin, petitioner's lawyer claims he had no idea that respondent Wiseman was a potential party in this case until late March of 2017. Petitioner's lawyer contends that, at a deposition, he "discovered" for the first time that respondent Wiseman performed work for DEP. Petitioner's lawyer learned, while talking to DEP's counsel, that DEP's counsel had been retained by Wiseman's insurer. This "discovery" by petitioner's lawyer prompted him, for the first time, to amend the original complaint and seek to add claims against DEP and Wiseman to the action. Mr. Hoosier appears to contend that his lack of knowledge about Wiseman, and his failure to conduct a reasonable investigation regarding the landslide, are sufficient to toll the statute of limitation.

The record, however, indisputably establishes that the petitioner's lawyer is basing his claims against Wiseman upon the July 22, 2013, landslide. The record also indisputably shows that petitioner's lawyer did not attempt to assert any claims against Wiseman until April of 2017, three years and nine months after the landslide. On this record, Wiseman properly asserted the two-year statute of limitation as an affirmative defense against petitioner's claims.

In analyzing a statute of limitation defense, this Court has held that the following five steps should be taken by a trial court weighing whether a cause of action is time-barred:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible

---

statute of limitations after previously entering multiple Orders allowing Petitioners to proceed on their claims against Wiseman.

2. The Hon. Judge Eric O'Briant, Circuit Court Judge, Logan County, West Virginia erred by granting summary judgment, in violation of the doctrine of *res judicata*.

cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W. Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. at 46, 689 S.E.2d at 258.

We now apply the five-step *Dunn* analysis. First, we find the circuit court correctly identified the statute of limitation applicable to petitioner's claims as the two-year period set forth in West Virginia Code § 55-2-12, and petitioner does not dispute this.

Second, it is undisputed that the landslide occurred, and all of petitioner's damages occurred, on July 22, 2013. Hence, petitioner's cause of action accrued on July 22, 2013, and petitioner makes no contrary claim.

Third, petitioner herself knew of the landslide and her damages on that date, triggering her – or her lawyer's – duty to investigate to ascertain what parties caused the landslide. DEP gave petitioner notice in early 2011 that it was entering her property and neighboring properties to grade the land above petitioner's house to remediate the coal-debris fire. On behalf of DEP, Wiseman actually performed the grading work. After the July 2013 landslide, DEP promptly responded, investigated, admitted responsibility for the slide, and again entered petitioner's land to remediate the landslide. Any reasonable person knew or should have known DEP was, in some part, potentially responsible for the landslide, and could have investigated what contractors DEP relied upon. EQT demonstrated the ease with which the information could be obtained. In other words, on this record, petitioner's lawyer has failed to offer any reason why petitioner should be entitled to the benefit of the discovery rule.

Fourth, *Dunn* provides that if a plaintiff is not entitled to rely upon the discovery rule, then the plaintiff must show the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing a potential cause of action. Petitioner does not allege, and has not shown, any fraud by Wiseman that concealed facts which precluded petitioner's lawyer from discovering or pursuing a cause of action against Wiseman. Instead, the record shows that EQT promptly filed a Freedom of Information Act request with DEP, and EQT was able to timely discover that DEP and Wiseman were potentially at fault for petitioner's losses. Petitioner's lawyer failed to follow EQT's lead, to the detriment of petitioner.

The argument of petitioner's lawyer hinges on the fifth factor in the *Dunn* analysis: that "the statute of limitation period was arrested by some other tolling doctrine." Syl. Pt. 5, *Dunn*, 225 W.Va. at 46, 689 S.E.2d at 258. Petitioner contends that Rule 15(c)(3) of the West Virginia Rules of Civil Procedure tolled the statute of limitation, and allowed the April of 2017 amended

complaint to "relate back" to the September of 2014 original complaint, and to be considered as having been filed on the earlier date.

Rule 15 describes the process whereby a party may amend a pleading such as a complaint. In limited circumstances, Rule 15(c) allows the amended pleading to "relate back" and be considered as though it had been filed on the same date as the original pleading. Rule 15(c) provides:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when:
>
> > (1) relation back is permitted by the law that provides the statute of limitations applicable to the action; or
> >
> > (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or
> >
> > (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing paragraph (2) is satisfied and, within the period provided by Rule 4(k) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have brought against the party.

Rule 15 of the Rules of Civil Procedure is to be construed liberally in order to promote the consideration of claims on their merits. *Brooks v. Isinghood*, 213 W. Va. 675, 684-91, 584 S.E.2d 531, 540-47 (2003). "The goal behind Rule 15, as with all the Rules of Civil Procedure, is to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Doyle v. Frost*, 49 S.W.3d 853, 856 (Tenn. 2001).

Petitioner centers her tolling argument on Rule 15(c)(3), and petitioner's attempt to "change[] the party . . . against whom a claim is asserted" after the statute of limitation has expired. Under Rule 15(c)(3), "chang[ing] the party" includes adding, dropping or substituting a party. *Brooks*, 213 W. Va. at 684, 584 S.E.2d at 540. In Syllabus Point 4 of *Brooks*, we identified the elements a plaintiff must prove under Rule 15(c)(3) to successfully amend a complaint to add a new party to a lawsuit, after the expiration of the statute of limitation:

> Under Rule 15(c)(3) of the *West Virginia Rules of Civil Procedure* [1998], an amendment to a complaint changing a defendant or the naming of a defendant will relate back to the date the plaintiff filed the original complaint if: (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) the defendant either knew or should have known that he or she would have been named

7

in the original complaint had it not been for a mistake; and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.

213 W. Va. at 678-79, 584 S.E.2d at 534-35. We now consider whether petitioner's lawyer established these four elements.

Petitioner's lawyer contends that petitioner has met the first of the four elements in *Brooks* and says that the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence that was asserted in the original complaint. We have reviewed both the original and amended complaints and cannot entirely agree. In the original complaint, petitioner's lawyer asserted petitioner suffered property damage, physical and emotional harm, and other damages as a result of non-specified "actions" of EQT. The original complaint did not mention the 2010 coal-debris fire that gave rise to Wiseman's 2011 construction activities and did not mention the 2013 landslide. While we presume the original complaint was filed because of the landslide damage to petitioner's house, the original complaint was so vaguely drafted that we cannot say for certain that the tortious conduct alleged in the amended complaint was the same conduct, transaction or occurrence.

The second element of *Brooks* requires a plaintiff to show that the defendant named in the amended complaint had notice of the filing of the original complaint before expiration of the statute of limitation. Petitioner's lawyer claims that Wiseman had notice, *or should have had notice*, of the petitioner's original complaint by January of 2015, when EQT filed a third-party complaint against DEP. There is nothing in the record showing Wiseman was notified of the third-party complaint in 2015. However, petitioner's lawyer claims Wiseman *should have been notified* because of the DEP-Wiseman contract language that required Wiseman to indemnify and hold harmless DEP. Petitioner's lawyer goes so far as to claim that, because Wiseman's insurer hired lawyers to defend DEP beginning in February of 2016, and because those same lawyers simultaneously represented the interests of Wiseman, that DEP's knowledge of the original complaint in January of 2015 is somehow imputed to Wiseman. Unfortunately for petitioner, the record is clear that DEP did not actually notify Wiseman of either the third-party or the original complaint until February of 2016, after expiration of the statute of limitation. Moreover, Rule 15(c) requires a defendant, in some fashion, have actual notice of the original complaint; constructive notice, such that defendant *should have known*, is insufficient under the second element of *Brooks*.

As we just noted, the second element of *Brooks* requires the defendant know about the original complaint. The third element of *Brooks* requires the plaintiff to demonstrate that the defendant either knew or should have known that it would have been named in the original complaint had it not been for a mistake. As we discussed above, the original complaint in the instant case made no mention of the 2010 coal-debris fire, or of DEP's and Wiseman's 2011 remediation work, or of the landslide that occurred in 2013 that was allegedly caused by the remediation work. Instead, Wiseman's first notice came upon receiving DEP's letter dated February 1, 2016. On this record, petitioner's lawyer failed to offer any evidence that Wiseman

8

either knew or should have known that it should have been named in the original complaint but was not named because of a mistake.[5]

The fourth and final element of the *Brooks* analysis requires there be both proof that the defendant received notice of the original complaint, and proof that the defendant knew or should have known that the plaintiff mistakenly did not sue the defendant in the original complaint, within the period prescribed for commencing an action and service of process of the original complaint. The record clearly shows that Wiseman first received notice and knowledge of petitioner's lawsuit in February of 2016, long after the expiration of the statute of limitation and the time period prescribed for service of the original complaint. Petitioner's lawyer has failed to show otherwise.

Taken together, petitioner has failed to meet the four elements required by *Brooks*. Accordingly, we find that petitioner's lawyer failed to establish an entitlement to relate the amended complaint back to the original complaint under Rule 15(c). Under *Dunn*, the statute of limitation period was not "arrested by some other tolling doctrine" and continued to run against the petitioner. Moreover, the record shows that the amended complaint against Wiseman was filed some three years and nine months after the accrual of petitioner's cause of action, long after the expiration of the two-year statute of limitation contained in W. Va. Code § 55-2-12. We therefore conclude that circuit court correctly granted summary judgment and dismissed petitioner's claims against Wiseman.

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5] Upon receiving DEP's February 1, 2016, letter, it is conceivable that Wiseman should have known that it should have been named in EQT's third-party complaint but was not named because of some mistake. The question under *Brooks*, however, is whether Wiseman should have known that it should have been named in the original complaint. As we have repeatedly noted, the original complaint is vaguely drafted and does not refer to the 2013 landslide, or the work by DEP or Wiseman that ostensibly caused or contributed to the landslide. On this record we cannot say the circuit court erred when it determined that Wiseman did not perceive of itself as a proper party.

9